# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

VICTORIA K. WYGLE,

        Claimant,

vs.

ANDREW M. SAUL,

Commissioner of Social Security,[1]

        Defendant.

No. 18-CV-3049-LTS

**REPORT AND RECOMMENDATION**

_____

Plaintiff Victoria K. Wygle ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Supplemental Security Income benefits ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. Sections 1381-85. Claimant contends that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons that follow, I recommend that the District Court **affirm in part and reverse and remand in part** the Commissioner's decision.

## I.    BACKGROUND

I adopt the facts set forth in the Parties' Joint Statement of Facts (Doc. 12) and only summarize the pertinent facts here. This is an appeal from a denial of supplemental security income benefits ("SSI"). Claimant was born on May 19, 1964. (AR[2] at 298.)

_____

[1] After this case was filed, a new Commissioner of Social Security was confirmed. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

[2] "AR" cites refer to pages in the Administrative Record.

1

Claimant has at least a high school education and is able to communicate in English. (*Id.* at 51.) She allegedly became disabled due to fibromyalgia and osteoarthritis in her knees, feet, and back/spine. (*Id.* at 328.) Claimant's original alleged onset of disability date was May 1, 2010. (*Id.* at 298.) Claimant filed an application for SSI on September 25, 2014. (*Id.* at 42.)[3] Claimant's claim was denied originally and on reconsideration. (*Id.* at 217-21, 228-32.) A telephonic hearing was held on June 9, 2017 with Claimant in Mitchellville, Iowa, where she was incarcerated; her attorney, Hugh Field, and a Hearing Monitor in Waterloo, Iowa; and ALJ Raymond Souza in Kansas City, Missouri. (*Id.* at 61-115.)[4] Vocational expert ("VE") Lisa Cox also appeared, but her location was not disclosed. (*Id.* at 176-82.) Claimant and the VE testified. (*Id.* at 157-82.) The ALJ issued an unfavorable decision on October 12, 2017. (*Id.* at 42-52.)

Claimant requested review and submitted additional evidence: 79 pages of records from Unity Point Health, dated September 8, 2015 to September 29, 2017 and various medical records from November 3 and November 9, 2017. (*Id.* at 2.) The Appeals Council denied review on June 8, 2018 and refused to consider the new evidence. (*Id.* at 1-5.) The Council found that the first group of medical records did not show a reasonable probability they would change the outcome of the ALJ's decision. (*Id.* at 2.) The Council found that the second group of records was irrelevant because they addressed

---

[3] This citation is to the ALJ's decision. Claimant's application is dated January 7, 2015. (AR at 298.) There is some information in the application under the heading "FUGITIVE FELON AND PAROLE OR PROBATION VIOLATION INFORMATION" that refers to "September 25, 2014." (*Id.* at 299.) I suspect Claimant had to update her application when she was arrested and this is the cause of the discrepancy.

[4] Claimant testified that she anticipated being released from prison at the end of June 2017. (AR at 158.) The only reason Claimant's then-current status as a prisoner is relevant to this Report and Recommendation is that some of the testimony referred to in Part III.A, *infra*, mentions Claimant's use of a walker before going to prison and the lack of a walker and diabetic shoes in prison. (*Id.* at 171-73.) In his decision, the ALJ also cites Claimant's prison medical records and those citations are discussed in the Report and Recommendation.

a time period after the ALJ's decision. (*Id.*)[5] Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

On August 27, 2018, Claimant timely filed her complaint in this Court. (Doc. 4.) The case was originally assigned to Chief Magistrate Judge C.J. Williams. (Doc. 2.) When Judge Williams was appointed as United States District Court Judge, the case was reassigned to me. On December 11, 2018, the case was reassigned to Chief District Court Judge Leonard T. Strand and me. On May 6, 2019, the briefing deadlines were passed and the Honorable Leonard T. Strand referred the case to me for a Report and Recommendation.[6]

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability when, due to physical or mental impairments, the claimant

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A claimant is not disabled if the claimant is able to do work that exists in the national economy but is unemployed due to an inability

---

[5] Claimant does not appeal these decisions by the Appeals Council and does not cite these records in support of her arguments.

[6] Claimant's reply brief in this case was filed one day late. I have, however, considered the arguments contained in the brief.

to find work, lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id.* If so, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. § 416.972(a),(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id.* An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id.* § 416.920(c). The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987) (quoting 20 C.F.R. §§ 404.1521(b), 416.921(b)). These include

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Id.* (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999) (quotation omitted).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). RFC is what the claimant can still do despite his or her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing 20 C.F.R. §§ 404.1545(a), 416.945(a)). RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is any work the claimant performed within the fifteen years prior to his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 416.960(b)(1). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* §§ 416.920(a)(4)(v), 416.960(c)(2). The ALJ must show not only that the claimant's RFC will allow the claimant to do other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

5

## A.    The ALJ'S Findings

The ALJ made the following findings at each step of the five-step process regarding Claimant's disability status.

At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since her alleged onset of disability date. (AR at 44.)

At step two, the ALJ found that Claimant suffered from the following severe impairments: fibromyalgia, depression, and anxiety. (*Id.*) The ALJ also found the following impairments nonsevere: Claimant's alleged respiratory impairment, back impairment, foot impairment, and impairment of the hands. (*Id.* at 45.) The ALJ also found Claimant's alleged migraines to be non-medically determinable. (*Id.*) In reaching these decisions, the ALJ considered listings 1.02 (major dysfunction of a joint due to any cause), 12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders). (*Id.* at 46-47.)

At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment listed in the regulations, either when considered singly or in combination. (*Id.* at 46.)

At step four, the ALJ found that Claimant had the following RFC:

[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) involving sitting or standing alternatively at will, as long as the person is not off task for more than 10% of the work period. The claimant could occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds. She could perform occasional stooping, crouching, kneeling and crawling. She could perform frequent fine and gross manipulation, bilaterally. The claimant must avoid all use of hazardous machinery, as well as all exposure to unprotected heights, and poorly ventilated areas. She could understand, remember and carryout simple, routine, repetitive tasks, consistent with SVP levels one and two type jobs.

6

(*Id.* at 47.)  The ALJ further found Claimant is unable to perform any of her past relevant work.  (*Id.* at 51.)

At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Claimant could perform, including cashier II, counter clerk, and housekeeper.  (*Id.* at 52.)  Therefore, the ALJ concluded that Claimant was not disabled.  (*Id.*)

**B.**     ***The Substantial Evidence Standard***

The ALJ's decision must be affirmed "if it is supported by substantial evidence on the record as a whole."  *Moore*, 572 F.3d at 522.  "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law. . . . [T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotations omitted).  The court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case.  *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted).  The decision is not outside that zone of choice simply because the court might have reached a different decision.  *Id.* (citing *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001)); *Moore*, 572 F.3d at 522 (holding that the court cannot reverse an ALJ's decision merely because substantial evidence would have supported an opposite decision).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence.  *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005).  A court considers both evidence that supports the ALJ's decision and evidence that detracts from it.  *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010).  The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when

7

determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

## III.    DISCUSSION

Claimant alleges the ALJ committed reversible error by (A) failing to fully and fairly develop the record related to her physical RFC and (B) failing to support his decision that work is available to Claimant in the national economy.  Claimant further argues the ALJ was not appointed in a constitutional manner.  Thus, the ALJ's decision must be vacated and Claimant's case remanded so a properly-appointed ALJ may adjudicate the claim.

### A.    *The ALJ did not fully and fairly develop the record regarding Claimant's physical RFC.*

The "social security hearing is a non-adversarial hearing, and the ALJ has a duty to fully develop the record." *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)).  The ALJ bears this responsibility "independent of the claimant's burden to press his case" and it extends to cases where claimants are represented by counsel at the administrative hearing.  *Stormo*, 377 F.3d at 806.  However, the Eighth Circuit has held:

> Ultimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment. Past this point, "an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994).

*Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013) (internal citations omitted).  The inquiry is whether the claimant "was prejudiced or treated unfairly by how the ALJ did or did not develop the record." *Onstad v. Shalala*, 999 F.3d 1232, 1234 (8th Cir. 1993). Absent unfairness or prejudice, remand is not required. *Id.* (citing *Phelan v. Bowen*, 846

8

F.2d 478, 481 (8th Cir.1988)).  The ALJ must determine a claimant's RFC "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

"Because [a] claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citation omitted). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Id.* (citing *Myers*, 721 F.3d at 526-27) (affirming RFC without medical opinion evidence); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012) (same).  Although Claimant bears the burden to "provid[e] the evidence [the Court] will use to make a finding about [Claimant's] residual functional capacity," the Court is "responsible for developing the claimant's complete medical history."  20 C.F.R. § 404.1545(a)(3) (2019).  "The ALJ's obligation to develop the record 'is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.'" *Coleman v. Colvin*, No. 13cv1004 EJM, 2013 WL 4069523, at *2 (N.D. Iowa Aug. 12, 2013) (quoting *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001)).  "The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)); *Martin v. Berryhill*, No. 1:18-CV-00004 JM/PSH, 2019 WL 138655, at *6 (E.D. Ark. Jan. 8, 2019) (explaining that "the ALJ must weigh the various medical opinions in the record") (citation omitted), *R. & R. adopted*, 2019 WL 334202 (E.D. Ark. Jan. 25, 2019).  "No symptom or combination of symptoms can be the basis for a finding of disability, no matter how

9

genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment." SSR 96-4p.

Claimant argues that the ALJ did not fully and fairly develop the record regarding her physical RFC. Specifically, Claimant asserts that the ALJ should have obtained a treating or examining physician's opinion regarding how "how her physical impairments limited her during the relevant time period. . . . [and to] opine as to whether there is a significant psychological component impacting [her] pain and physical symptoms contributing to her falls and need for a walker." (Doc. 13 at 6, 8.)

Claimant asserts that because the ALJ acknowledged her history of falling and using a walker due to walking problems, his conclusion that Claimant's stated limitation to standing 15 minutes and walking five minutes is out of proportion with the objective medical evidence is not supported in the record. (*Id*. at 7.) According to Claimant, the ALJ's reliance on her lack of a walker and lack of use of special diabetic shoes in prison to support his conclusion is inappropriate because she is not allowed to have her walker or diabetic shoes in prison. (*Id*.) Finally, Claimant avers that the ALJ did not consider the effect her psychological conditions had on her physical functioning. (*Id*.)

The Commissioner responds that "[t]he ALJ's decision to discount a claimant's testimony or negatively weigh evidence alone does not trigger the need to undertake further development." (Doc. 14 at 9 (citing 20 C.F.R. §§ 404.1520b, 416.920b; *Kamann*, 721 F.3d at 950).) The Commissioner also argues that the ALJ properly supported his decision and properly weighed the medical evidence in the record. (*Id*. at 9-10.) The Commissioner cites SSR 96-9p:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for

10

> which it is needed (i.e., whether all the time, periodically, or only in certain
> situations; distance and terrain; and any other relevant information).

SSR 96-9p (discussing erosion of ability to meet requirements of work at sedentary level). The Commissioner apparently cites this rule to bolster an unspoken argument that because no one has prescribed a walker for Claimant, a walker is not necessary. Surprisingly, Claimant does not argue that a walker has been prescribed for her in spite of her testimony that her walker was prescribed by "Dr. Karen. . . . on Green Hill Road at the Point Clinic." (AR at 171 (alterations in original).) Claimant also testified that prior to being incarcerated, she used a walker both at home and in public. (*Id.* at 171-72.)

Claimant's failure to argue that the walker was prescribed is also surprising because on April 2, 2015, Claimant presented at Unity Point Family Medicine at Green Hill complaining of an increasing number of falls that were not caused by tripping. (*Id.* at 493.) At that appointment Claimant was prescribed a walker. (*Id.* at 498.) However, this prescription does not describe the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The treatment note, signed by Gerald Q. Burnett Jr., PA-C, says, "Walker—use as prescribed—medical/safety necessity." (*Id.*) Claimant seems to have requested the walker because on the same date a telephone encounter is noted: "Reason for call—fall; requesting walker." (*Id.* at 499 (punctuation added, formatting omitted).)

The existence of the prescription does not mean Claimant is automatically entitled to further development of the record unless the record as a whole supports that decision. It was still Claimant's burden to establish she was disabled. *See Moore*, 572 F.3d at 523. Claimant's advocate did not attempt to obtain the details of the prescription at the hearing. In fact, it appears that neither Claimant nor the Commissioner was aware of the prescription. However, the parties should have been aware of the prescription's existence because the prescription was made part of the record on April 6, 2015 and because the

state agency consulting physicians mentioned the prescription in their opinions. (AR at 195, 209, 484.)

I find that remand is required for the ALJ to reweigh the medical evidence in the case and, if necessary, craft a new RFC. The ALJ assigned great weight to the opinions of the state agency medical consultants who reviewed the record, reducing the weight as discussed below. (*Id.* at 50.) The consultants opined that Claimant could lift up to 20 pounds occasionally and 10 pounds frequently, stand or walk up to six hours in an eight-hour workday, and sit up to six hours in an eight-hour workday. (*Id.* at 193, 207-08.) The consultants further opined that Claimant could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, but never climb ladders, ropes or scaffolds and must avoid concentrated exposure to hazards such as machinery and heights. (*Id.* at 193-94, 208-09.) The ALJ reduced the weight assigned to these opinions based on Claimant's testimony regarding difficulties sitting and standing for extended periods. (*Id.* at 50.) The ALJ reasoned, "While it does not appear that an assistive device has been prescribed to her, or that she requires the device while incarcerated, she has consistently complained during treatment of problems standing and walking, which would be better suited by the option to sit and stand during the workday." (*Id.*) This statement indicates not only that the ALJ did not review the treatment note containing the walker prescription, but also that the ALJ did not carefully read the opinions of the state agency consulting physicians.[7]

---

[7] By recommending remand based on this statement by the ALJ, I am not opining that the ALJ came to an incorrect conclusion regarding the weight he assigned to the consulting physicians' opinions. It may be that after reading the opinions, the ALJ will reach the same conclusion. However, the ALJ has to (1) read the opinions to which he assigns weight and (2) assign weight to the opinions with the entire record in mind. *See* 20 C.F.R. Section 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion.")

Turning to the issue of whether to recommend remand to obtain a consulting or examining physician's opinion regarding Claimant's RFC, I find that such an opinion is necessary. While the ALJ is correct that Claimant was able to ambulate in prison without the aid of a walker and, indeed, did not request the use of a walker while in prison (*Id.* at 48), Claimant also testified to the following.

| | |
|---|---|
| Claimant | They wouldn't even give me my walker here. The first time my legs give out is if I walk too far, they're—I walk. So I take the elevator. |
| Attorney | Were you prescribed the— |
| Claimant | Because I am on the second floor. |
| Attorney | Were you prescribed the walker? |
| Claimant | Yes. I was prescribed the walker from—and they won't even let me use it here. |

(*Id.* at 171 (identification of speakers added).) Thus, Claimant seems to have asked to use her walker while incarcerated or was at least under the impression that she could not have a walker in prison. The ALJ acknowledged that Claimant was not allowed to have a walker in prison. (*Id.* at 49.)

The ALJ also recognized that Claimant "has demonstrated a disturbance of gait on examination, and appeared at appointments with a walker. She testified she required the use of a motorized scooter while shopping in stores. She also has a history of falls, due to difficulty ambulating." (*Id.* at 48 (citing AR at 349, 493, 522).) The ALJ related Claimant's falling to her fibromyalgia. (*Id.*) The ALJ noted that throughout the administrative process, Claimant alleged that her symptoms were worsening, culminating in her need for a walker to ambulate. (*Id.* (citing AR 328, 356, 373).) On November 18, 2014, Claimant presented to her physician stating that she fell the night before and then slipped and fell again that day and twisted her ankle. (*Id.* at 444.) The physician counseled Claimant on the importance of exercise and weight loss for fibromyalgia management. (*Id.* at 445.) On April 2, 2015, Claimant again presented because she had

13

been falling at home. (*Id.* at 493.) This is the appointment at which the walker was prescribed. (*Id.* at 498.) The prescription was based on "medical/safety necessity," in spite of the fact that Claimant requested a walker. (*Id.* at 498-99.)

Moreover, the ALJ's reliance on Claimant's ability to ambulate independently while in prison without restrictions and without any mention of gait disturbances or treatment for falls (*Id.* at 45, 48-49) is also not as persuasive as it might be. As the ALJ noted, Claimant reported an increase of foot pain while incarcerated.[8] (*Id.* at 45.) Claimant complained that the insoles provided for her in prison did not alleviate her pain, but refused to try the other insoles available in the prison canteen or to try the alternate shoes available to her in the canteen, instead requesting that she be provided diabetic shoes like the ones she wears at home. (*Id.* at 653, 681, 685.) In spite of this, it is unclear how much Claimant walked while in prison. She testified that she did not work while incarcerated and that the "only time she pretty much walk[ed]" in prison was going to the laundry room, a distance of about a block, or less than a five-minute walk. (*Id.* at 170.) Claimant told her prison healthcare providers that she got some relief from her foot pain by elevating her feet. (*Id.* at 653.) She also testified that when she stands for more than ten or fifteen minutes, she has to sit or lie down. (*Id.* at 168-69.) Claimant stated that after sitting for a time, for example after approximately 20 minutes,[9] she gets uncomfortable, and will "go in [her] bedroom and try to lay down, to get comfortable." (*Id.* at 170.) This seeming ability to rest at will when walking or standing becomes too

_____

[8] The ALJ stated that Claimant "has been known to exaggerate pain symptoms while seeking treatment." (AR at 49.) The page of the administrative record the ALJ cites in support of this statement is a November 29, 2016 document in Claimant's prison treatment notes that contains a chronological listing of eight of Claimant's pre-incarceration appointments at Unity Point Health. (*Id.* at 690.) Each appointment is summarized in a few words up to two sentences. (*Id.*) The summary at issue is from a doctor who doubted Claimant had fibromyalgia. (*Id.*)

[9] Claimant testified that she was getting uncomfortable at approximately 60% of the way through the 34-minute hearing. (AR at 169-70.)

14

much for Claimant does not support a finding that Claimant can sustain full-time work, even with a sit/stand option.

The ALJ also found that Claimant retained full strength in her upper and lower extremities. (*Id.* at 48-49 (citing AR at 456).) I find that the ALJ's citation to this lone page of the record does not support this finding. While the record does state that on April 28, 2014, more than three years prior to the ALJ issuing his decision, Claimant had muscle strength of 5/5 in her upper and lower extremities, my review of the record revealed only one other lower extremity strength test and one possible range of motion test. On July 7, 2015, Claimant had a pre-operative physical prior to carpal tunnel release surgery. (*Id.* at 540-47.) Claimant had a normal range of motion.[10] (*Id.* at 545.) Surprisingly, it seems that Claimant's lower extremity muscle strength was not tested more than once. On June 27, 2015, Claimant had poor right to left lower extremity coordination and was unable to heel and toe walk with ease. (*Id.* at 522.) Claimant was walking with her walker. (*Id.*) She had "pain on palpation of pedal pulses, let alone range of motion and muscle testing." (*Id.*) Thus, Claimant does not necessarily retain full strength in her lower extremities, especially in light of her consistent testimony and disclosures that her legs "give out," she is unable to walk any significant distance, and she uses a chair for household chores because "she falls so much." (*E.g. id.* at 171-72, 444, 503.)

In finding Claimant's fibromyalgia is not as severe as Claimant asserts, the ALJ also relied on the facts that Claimant has not sought treatment from a specialist, has not had tender point testing, and had a negative ANA test result. First, while conservative treatment can weigh against a finding of disability, *Black v. Apfel*, 143 F.3d 383, 386

---

[10] I realize that this was likely the range of motion in her wrist, but am including it here because the record does not indicate what joint range of motion was tested.

(8th Cir. 1998), there is no requirement that Claimant seek treatment from a specialist before being found disabled. Second, once Claimant had a fibromyalgia diagnosis, it would have been unusual for her to seek tender point testing, which was once used to diagnose fibromyalgia. Tender point testing is no longer required to diagnose fibromyalgia. *See* SSR 12-2p (explaining the 1990 and 2010 criteria for evaluating claims based on fibromyalgia); Mayo Clinic, Fibromyalgia: understand the diagnosis process, https:// www.mayoclinic.org/diseases-conditions/fibromyalgia/in-depth/fibromyalgia-symptoms /art-20045401 (noting that tender points are no longer used to diagnose fibromyalgia). Third, the ALJ's reliance on a negative ANA test to discount Claimant's fibromyalgia claims is bewildering because an ANA test "detects antinuclear antibodies (ANA) in [the] blood. . . . [and doctors are] likely to order an ANA test for a suspected autoimmune disease such as lupus, rheumatoid arthritis or scleroderma." The Mayo Clinic, ANA Test, https://www.mayoclinic. org/tests-procedures/ana-test/about/pac-20385204?page=0&citems=10. The ANA test is not a test used to diagnose fibromyalgia. "While there is no lab test to confirm a diagnosis of fibromyalgia, your doctor may want to rule out other conditions that may have similar symptoms. Blood tests may include: Complete blood count, Erythrocyte sedimentation rate, Cyclic citrullinated peptide test, Rheumatoid factor, [and] Thyroid function tests." The Mayo Clinic, Fibromyalgia, https://www.mayoclinic.org/diseases-conditions/fibromyalgia/ diagnosis-treatment/drc-20354785 (punctuation altered in list). Thus, an ANA test is not associated with the diagnosis of fibromyalgia. *See* SSR 12-2p.

In conclusion, I find that substantial evidence in the record does not support the ALJ's conclusion regarding Claimant's RFC, especially when considering that the ALJ ignored Claimant's prescription for a walker. The record is a mixed bag, at best, and there is no way to predict if the ALJ would have weighed the evidence differently had he considered that prescription. Moreover, because the evidence is mixed regarding

Claimant's need for a walker after receiving the walker prescription (*Compare* AR 522 (Claimant "ambulatory with walker assistance" on April 27, 2015) with AR 560 (Claimant "ambulating independently with a normal steady gait" on July 9, 2015)), a consulting medical evaluation is needed to determine if Claimant needs a walker or other assistive device in the workplace.[11]

**B.** ***The ALJ did not properly support his decision that work was available to Claimant in the national economy.***

Claimant argues that "[a]ssuming arguendo the ALJ's RFC accurately reflects Ms. Wygle's limitations, the vocational expert's testimony does not indicate that jobs are necessarily available in significant numbers in the national economy that Ms. Wygle could

---

[11] I find remand to determine whether there is a significant psychological component impacting Claimant's pain and physical symptoms is unnecessary. (*See* Doc. 13 at 7.) Claimant's argument for remand on this basis consists of one sentence asking for remand and one citation to a prison treatment note from an appointment with psychiatrist Jerome Greenfield that states, in pertinent part, "Admitted to long standing issues with abusive husband and rapes from uncle and church peer. Has Fibromyalgia too. Discussed how past traumas can be associated with severe mood issues which sometimes don't respond well to meds and can lead to pain issues too. Urged more psychology input, trauma work." (AR at 696.) Claimant cites no record indicating that she followed up with psychology and I could find no therapy treatment notes in the administrative record. Claimant had previously been encouraged to seek input from psychology as well. (*Id.* at 708, 724.) This undermines Claimant's argument. *See Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004) ("failure to follow prescribed medical treatment without good cause is a basis for denying benefits") (citing *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995)). Moreover, Dr. Greenfield did not opine that Claimant's pain was related to psychological issues. He merely explained to Claimant that sometimes trauma and mood can affect pain. Claimant has cited no other records linking her pain to psychological issues. Thus, this argument is underdeveloped and need not be addressed. *See Aulston v. Astrue*, 277 F. App'x 663, 664-65, 2008 WL 2066019 (8th Cir. 2008) (declining to address underdeveloped argument) (citing *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (collecting cases for proposition that undeveloped arguments are waived)); *Rotskoff v. Cooley*, 438 F.3d 852, 854–55 (8th Cir. 2006) (considering undeveloped argument "abandoned for failure to provide any reasons or arguments for his contentions") (quotation omitted).

17

perform because the vocational expert only gave a qualified response to the ALJ's hypothetical question resembling the eventual RFC." (Doc. 13 at 3.) Claimant asserts that it was not clear from the VE's testimony that all employers would offer a sit/stand option without an accommodation and therefore the ALJ was not entitled to rely on that testimony to support his decision that jobs existed in the national economy that Claimant can perform. (*Id*. at 5.) The Commissioner responds that the VE "indicated the occupations and job numbers she provided 'do allow – could allow for a sit/stand option consistent with the hypothetical number one.'" (Doc. 14 at 6 (quoting AR at 181).) The Commissioner also argues that even if the sit/stand option would be an accommodation, the Eighth Circuit has recently held that ALJs may consider whether such accommodations are prevalent or commonly offered when determining whether a claimant is able to perform a particular job. (*Id*. at 7 (citing *Higgins v. Comm'r Soc. Sec. Admin.*, 898 F.3d 793, 795-97 (8th Cir. 2018).)

The ALJ proffered the following hypothetical to the VE, which became the RFC in this case:

> What I'd like for you to do now is for you to assume a person of the claimant's age, education and work experience who is able to do light work with a sit/stand option, allowing the person a sit/stand alternative. The other will provide that a person is not off task by more than 10 percent of the work period. With no climbing of ladders, ropes or scaffolds, occasional climbing of ramps and stairs, occasional stooping, crouching, kneeling and crawling. Gross manipulation is frequent bilaterally, fine manipulation is frequent bilaterally. Must avoid all use of hazardous machinery as well as all exposure to unprotected heights. Must avoid all exposure to poorly ventilated areas. Able to remember, understand and carry out simple and routine instructions and tasks, consistent with SVP levels 1 and 2 type jobs.

(AR at 179.) The VE provided the following jobs for the hypothetical person. "An example that would meet your hypothetical and allow for that sit/stand option with no

more than 10 percent off task would be cashier II. . . .  A second example is counter clerk. . . .  A third example is hotel housekeeper." (*Id.* at 180.)

The following exchange then took place between Claimant's attorney and the VE.

| | |
|---|---|
| Q | And your sit/stand option, is that consistent with the *DOT* or is that from your experience? |
| A | The sit/stand option, off task time, the absences, all of those are based on my experience and are just outside the scope of the *DOT*. |
| Q | Okay. And would -- I mean, you've listed all of these jobs. Would all employers offer a sit/stand option or would that be likely to be an accommodation? |
| A | Certainly that is based upon the employer, the – what their policy is and so to answer the first part of your question, of course not all employers would offer that and for those particular employers that would be an accommodation. However, those jobs do allow -- could allow for a sit/stand option consistent with the hypothetical number one. |
| Q | I didn't understand what you just said at the very end there. |
| ALJ: | I understood. Basically you said it's not an accommodation and it would be dependent upon the employer because those jobs can be performed either in a sitting or a standing position. Is that right, Ms. Cox? |
| VE: | Certainly they could be performed with sitting only a portion of the time and not off task greater than 10 percent. |
| ATTY: | And if -- at that -- let me just look to see what else I have. I don't think I have anything else. |
| ALJ: | Thank you. And also, Ms. Cox, as far as the sit/stand option, as well as the off task and the absences, it's just not addressed in the *DOT*. So it's just t-- it's not inconsistent, it's just not addressed. Is that correct? |
| VE: | Yes, sir. That's correct. |
| ALJ: | Thank you. |

(*Id.* at 181-82.)

Claimant argues that "[t]he clarifying testimony of the vocational expert, that not all employers would offer a sit/stand option, for those that would[,] it would be an accommodation, and the jobs 'could allow for a sit/stand option consistent with the

hypothetical number one' does not answer the question as to whether employers actually do offer the accommodation in significant numbers in the national economy [for] the jobs the vocational expert identified." (Doc. 13 at 3-4 (citing *Eback v. Chater*, 94 F.3d 410, 412 (8th Cir. 1996).) *Eback* remanded a case for an award of benefits, in part, because the ALJ relied on VE testimony that the VE thought an employer would accommodate the claimant's daily need to use a nebulizer at work because employers must do so as a reasonable accommodation under the ADA. 94 F.3d at 412. *Eback* quoted the following statement from the Commissioner of Social Security:

> [The inquiry into other available jobs] is based on the functional demands and duties of jobs as ordinarily required by employers throughout the national economy, and not on what may be isolated variations in job demands (regardless of whether such variations are due to compliance with anti-discrimination statutes or other factors). Whether or how an employer might be willing (or required) to alter job duties to suit the limitations of a specific individual would not be relevant because our assessment must be based on broad vocational patterns . . . rather than on any individual employer's practices. To support a . . . finding that an individual can perform "other work," the evidence . . . would have to show that a job, which is within the individual's capacity because of employer modifications, is representative of a significant number of other such jobs in the national economy.

*Id.* (alterations in original). Thus, in order for the ALJ's reliance to be justified, the VE's testimony has to refer to broad employer patterns, rather than individual employer practices.

The Commissioner responds by offering the following interpretation of the testimony. The VE testified not all employers would offer a sit/stand option and therefore a sit/stand option would be an accommodation for those employers. (Doc. 14 at 6 (citing AR at 181).) However, the Commissioner notes that in the next sentence, the VE "indicated the occupations and job numbers she provided 'do allow – could allow for a sit/stand option consistent with the hypothetical number one.'" (*Id.*). When Claimant's

20

counsel then said he did not understand, and the ALJ "clarified, and the vocational expert agreed, that she had testified the sit/stand option was not an accommodation and was dependent on the employer because those jobs (i.e. the ones she testified the individual could perform) could be performed either in a sitting or standing position." (*Id.*)

To some extent, both parties rely on *Higgins v. Comm'r Soc. Sec. Admin.*, 898 F.3d 793 (8th Cir. 2018) to support their arguments. In *Higgins*, the ALJ included the need for a bariatric chair in the claimant's RFC.[12] 898 F.3d at 794. The ALJ found that "even if the claimant required a bariatric chair, the vocational expert indicated this is a common accommodation in the workplace and, even with this added to the claimant's [RFC], she was able to provide a significant number of jobs in the regional and national economies" the claimant could perform. *Id.* The district court and the Eighth Circuit affirmed the ALJ's decision. *Id.* at 797. In affirming the district court, the Eighth Circuit reasoned:

> It makes no difference that a particular workplace modification, such as a bariatric chair, might be called an "accommodation" or even a "reasonable accommodation." *See* 42 U.S.C. § 12111(9) (defining "reasonable accommodation" for ADA purposes). The use of the phrase is immaterial. It also makes no difference that a particular modification or accommodation is offered because the ADA requires employers to do so. What matters is the functional workplace as it actually exists. If a particular modification or "accommodation" has become prevalent and is commonly offered— whether considered required by the ADA or not—an ALJ may, of course, consider this evidence in making its determination.

*Id.* at 796.

---

[12] "Bariatrics is the 'branch of medicine concerned with the prevention and control of obesity and allied diseases.' *Stedman's Medical Dictionary* 203 (28th ed. 2006). As it was later described to the vocational expert in this case, Higgins's chair must be able to withstand his 425 pounds for six hours a day." *Higgins*, 898 F.3d 793, 794 n.2.

Claimant cites *Higgins* for the proposition that an ALJ "may rely on vocational expert testimony that a needed modification is part of a functional workplace, but 'the functional workplace' has to actually exist and not be theoretical." (Doc. 13 at 5) (quoting *Higgins*, 898 F.3d at 796).) The Commissioner, on the other hand, cites *Higgins* for its holding: that an ALJ is able to consider accommodations that are "prevalent or commonly offered when evaluating a claimant's ability to perform an occupation." (Doc.14 at 7 (citing *Higgins*, 898 F.3d at 795-97).)

*Higgins* relied on *Jones v. Apfel*, 174 F.3d 692, 693-94 (5th Cir. 1999), in which the court held that the claimant could perform assembly line jobs, even though he needed a sit/stand option, because the VE testified that "most employers of an assembly line job will accommodate sitting and standing at will, this 'suggest[ed] . . . that allowing for an employee to alter between sitting and standing is a prevalent accommodation in the workplace.'" 898 F.3d at 796 (alterations in original).

For support, Claimant cites *Penn v. Sullivan*, which the court remanded because the VE "substantially changed the hypothetical and assumed that the claimant could work a full day, even though the VE had been instructed to assume that the claimant could sit no more than four hours in a day and could stand for less than one hour." 896 F.2d 313, 317 (8th Cir. 1990). Claimant also cites *Ellison v. Sullivan*, which the court remanded because the VE offered light, medium, and heavy jobs that the ALJ adopted into his decision "based on the assumption" the claimant could perform this level of work when the hypothetical the ALJ proffered limited the claimant to sedentary work. 921 F.2d 816, 821-22 (8th Cir. 1990).

The facts of this case are neither on point with the facts of *Higgins* and *Jones* nor *Penn* and *Ellison*. The case at bar can be distinguished from *Penn* and *Ellison* because the VE in the case at bar did not provide jobs that were clearly beyond the level of the RFC proffered by the ALJ. Although Claimant argues that the VE's testimony does not

establish that the jobs at issue cannot be performed with a sit/stand option, this is far different from a VE ignoring the hypothetical presented to her like the VEs in *Ellison* and *Penn* did.

Although it is a much closer call, I also conclude that the case at bar can be distinguished from *Higgins* and *Jones*. While the VE initially testified that the three jobs she identified "would meet [the ALJ's] hypothetical and allow for that sit/stand option with no more than 10 percent off task," unlike the VEs in *Higgins* and *Jones*, the VE here did not testify that a sit/stand option was prevalent and commonly offered for those jobs.

An examination of the testimony shows that the clarification upon which the Commissioner relies actually hurts his argument. The ALJ stated, "Basically you said it's not an accommodation and it would be dependent *upon the employer* because those jobs can be performed either in a sitting or standing position." (AR at 181 (emphasis added).) Whether a particular employer might accommodate a sit/stand option is not dispositive of whether there are jobs in the national economy at step five that will accommodate a sit/stand option because the ALJ's assessment must be based on "broad vocational patterns" rather than the practices of individual employers. *See Eback*, 94 F.3d at 412. In addition, performing a job either sitting *or* standing is not the same thing as alternating between sitting and standing at will.

Furthermore, the VE's final statement that "Certainly [the jobs] could be performed with sitting only a portion of the time and not off task greater than 10 percent" (AR at 181-82) is not the same as saying employers who provide these jobs commonly allow employees to have a sit/stand option or that sit/stand options have become common workplace accommodations. *See Higgins*, 898 F.3d at 794 ("[E]ven if the claimant required a bariatric chair, the vocational expert indicated this is a common

23

accommodation in the workplace."); *Jones*, 898 F.3d at 796 (VE testified that "most employers of an assembly line job will accommodate sitting and standing at will.").

In conclusion, I find that the ALJ's decision that there were jobs in the national economy that Claimant could perform is not supported by substantial evidence. The case should be remanded for additional clarifying vocational expert testimony. If Claimant's RFC changes based on the Part III.A remand, expert testimony may need to be altered accordingly.

**C.      *Claimant failed to timely raise her Appointments Clause argument under* Lucia v. SEC.**

In *Lucia v. SEC*, the Supreme Court held that ALJs of the Securities and Exchange Commission are "Officers of the United States" within the meaning of the Appointments Clause, and, therefore, the President, a court of law, or department head must appoint them. 138 S. Ct. at 2049. Claimant argues that SSA ALJs should be treated as improperly appointed "inferior officers" like the SEC ALJs in *Lucia*. (Doc. 13 at 8-11.) Claimant asserts this Court should vacate the denial of benefits by ALJ Souza and remand the case for decision by what she contends is a properly-appointed ALJ. (*Id.* at 8.) Claimant admits she is asserting this Appointments Clause challenge for the first time in her brief to this Court. (*Id.* at 9-11.)

Claimant asserts that her case can be distinguished from many of the earliest cases addressing this issue because the earlier cases were decided before EM-18003 was issued by the SSA and before former Acting Commissioner Berryhill's authority lapsed, which "led the SSA to lack a Department Head that could provide a remedy for an Appointments Clause challenge." (Doc. 13 at 8.) For support, Claimant cites SSR 19-1p, 2019 WL 1202036, Effect of the Decision in *Lucia v. Securities and Exchange Commission (SEC)* on Cases Pending at the Appeals Council. (Doc. 13 at 8-9.) However, SSR 19-1p is inapplicable to Claimant's case because the ruling only applies to challenges timely raised

before the Appeals Council or previously raised at the ALJ level. 2019 WL 1202036, at *9583; *see also Murphy v. Comm'r of Soc. Sec.*, No. 18-CV-61-LRR, 2019 WL 2372896, at *7 (N.D. Iowa April 10, 2019) (addressing SSR 19-1p and holding that claimant waived *Lucia* issue when she raised it for the first time in the district court), *appeal docketed*, *sub nom Murphy v. Saul*, No. 19-2202 (8th Cir. June 12, 2019).

Claimant also cites *Bizarre v. Berryhill*, 364 F. Supp. 418 (M.D. Pa. 2019), *affirmed*, *Cirko ex rel Cirko v. Comm'r of Soc. Sec.*, No. 19-1772, –– F.3d ––, 2020 WL 370832 (3d Cir. Jan. 23, 2020); *Bradshaw v. Berryhill*, 372 F. Supp. 3d 349 (E.D.N.C. 2019), *appeal docketed*, *sub nom Bradshaw v. Saul*, No. 19-1531 (4th Cir. June 4, 2019); and other district court cases from the same circuits and encourages the Court to adopt *Bizarre's* reasoning in this case. (Doc. 16 at 2-3.) The *Bizarre* court held that it did "not believe that [the claimant] was required to raise her [Appointments Clause challenge] before the ALJ or Appeals Council in the first instance or that failure to do so worked a forfeiture of that claim." *Id.* at 425. I respectfully disagree and decline to adopt the *Bizarre* court's holding. Instead, I agree with the holding in *Murphy*: "[T]he court respectfully disagrees with the *Bizarre* court's holding. This court believes that failure to raise an Appointments Clause challenge before the ALJ or Appeals Council at the agency level waives the issue on judicial review at the district court level." 2019 WL 2372896, at *7 (citing *NLRB v. RELCO Locomotives, Inc.*, 734 F.3d 764, 798 (8th Cir. 2013); *Anderson v. Barnhart*, 344 F.3d 809, 814) (8th Cir. 2003)).

Furthermore, the recent decision in *Griffin v. Comm'r of Soc. Sec.* addressed the Third Circuit's decision in *Cirko ex rel Cirko v. Comm'r of Soc. Sec.*, No. 19-1772, –– F.3d ––, 2020 WL 370832 (3d Cir. Jan. 23, 2020), and provided additional reasons why *Murphy* is still the better view. No. 18-CV-85-LRR, 2020 WL 733886 (N.D. Iowa Feb. 13, 2020).

[I]n *Ramazetti v. Comm'r of Soc. Sec.*, No. 8:19-cv-260-T-MAP, 2020 WL 428950 (M.D. Fla. Jan. 28, 2020), the district court determined that the claimant's Appointments Clause challenge failed because the claimant waived the issue by not raising it before the ALJ or Appeals Council. *See id.* at *8. Further, the district court stated that "[t]he Supreme Court in *Lucia* did not make a blanket finding that all ALJs are subject to the Appointments Clause, just that SEC ALJs are so subject." *Id.* The district court points out that, "[a]t the time the Supreme Court decided *Lucia*, the SEC had only five ALJs. . . . In contrast, there are currently over 1,700 Social Security Administration ALJs." *Id.* The district court also notes that "[t]he Social Security Administration annually receives about 2.6 million initial disability claims and completes about 689,500 ALJ hearings; in 2018, it took an average 809 days to process a claim from its initial receipt to an ALJ decision, with more than 850,000 people waiting for ALJ hearings." *Id.* The district court concluded that "[i]f courts were to apply *Lucia* to Social Security cases as Plaintiff argues this [c]ourt should, millions of cases would need [to] be remanded for rehearing by a different ALJ. Given these important efficiency concerns and the Supreme Court's specific findings in *Lucia*, the [c]ourt is skeptical that *Lucia* is even controlling as to Social Security Administration ALJs." *Id.* (quoting *Miaolino v. Comm'r of Soc. Sec.*, No. 2:18-cv-494-FtM-UAM, 2019 WL 2724020 (M.D. Fla. July 1, 2019)).

*Id.* at *10 (all alterations except first set of brackets in original).

This Court has ruled in favor of the Commissioner on similar claims on several occasions. *See Hall v. Saul*, No. 18-CV-2032-LTS-KEM, 2019 WL 5085427, at *16 (N.D. Iowa Oct. 10, 2019); *Gilbert v. Saul*, No. C18-2045-LTS, 2019 WL 4751552, at *20 (N.D. Iowa Sept. 30, 2019); *Squier v. Saul*, No. 18-CV-3026-LTS, 2019 WL 4696415, at *10 (N.D. Iowa Sept. 26, 2019); *Rollie v. Saul*, No. 18-CV-129-CJW-KEM, 2019 WL 4673220, at *10 (N.D. Iowa Sept. 25, 2019); *Dewbre v. Comm'r of Soc. Sec.*, No. 18-CV-4055-LRR, 2019 WL 4344288, at *6 (N.D. Iowa Sept. 12, 2019); *Sexton v. Saul*, No. C18-1024-LTS, 2019 WL 3845379, at *8 (N.D. Iowa Aug. 15, 2019); *Frazer v. Saul*, No. C18-2015-LTS, 2019 WL 3776996, at *4 (N.D. Iowa Aug. 12, 2019); *Murphy*, 2019 WL 2372896, at *7; *White v. Comm'r of Soc. Sec.*, No. C18-2005-LTS,

2019 WL 1239852, at *4 (N.D. Iowa Mar. 18, 2019); *Stearns v. Berryhill*, No. 17-CV-2031-LTS, 2018 WL 4380984, at *6 (N.D. Iowa Sept.14, 2018); *Davis v. Comm'r of Soc. Sec.*, No. 17-CV-80-LRR, 2018 WL 4300505, at *8-9 (N.D. Iowa Sept. 10, 2018); *Iwan v. Comm'r of Soc. Sec.*, No. 17-CV-97-LRR, 2018 WL 4295202, at *9 (N.D. Iowa Sept. 10, 2018); *Thurman v. Comm'r of Soc. Sec.*, No. 17-CV-35-LRR, 2018 WL 4300504, at *9 (N.D. Iowa Sept. 10, 2018).

In *Stearns*, this Court ruled as follows:

> The United States District Court for the Central District of California has considered *Lucia* in the Social Security context, holding that claimants have forfeited the Appointments Clause issue by failing to raise it during administrative proceedings. *See Trejo v. Berryhill*, Case. No. EDCV 17-0879-JPR, 2018 WL 3602380, at *3 n.3 (C.D. Cal. July 25, 2018). I find this holding to be consistent with [relevant precedent]. Stearns' argument that an issue need not be raised if the ALJ does not have authority to decide it does not hold water under *Lucia*. *Lucia* made it clear that, with regard to Appointments Clause challenges, only "one who makes a timely challenge" is entitled to relief. *Lucia*, 138 S. Ct. at 2055 (quoting *Ryder*, 515 U.S. at 182-83).

> In *Lucia*, the Supreme Court acknowledged the challenge was timely because it was made before the Commission. *Id*. In the context of Social Security disability proceedings, that means the claimant must raise the issue before the ALJ's decision becomes final. . . . *Lucia* makes it clear that this particular issue must be raised at the administrative level.

> Because Stearns did not raise an Appointments Clause issue before or during the ALJ's hearing, or at any time before the ALJ's decision became final, I find that she has forfeited the issue for consideration on judicial review. As such, her request for remand on this basis is denied.

2018 WL 4380984, at **5–6 (paragraph break added).

Finally, although Claimant argues that raising the issue during the administrative process would have been futile because Social Security EM-18003 prevented the ALJ from addressing the issue (Doc. 13 at 11), nothing stopped Claimant from raising the

issue during the administrative process and preserving it for appeal. In addition, Claimant's argument that former Acting Commissioner Berryhill's authority lapsed between November 2017 and April 2018, leaving the SSA with "no Department Head . . . with the power to appoint an inferior officer to hear her claim or otherwise decide her claim" much of the time it was pending (*Id.* at 10), is unavailing for the same reason. Nothing prevented Claimant from raising this issue in her appeal to the Appeals Council and preserving it for appeal to this Court.

However, because I recommend that Claimant's request for remand should be granted on other bases, Claimant should be permitted to assert this objection on remand. *See Weatherman v. Berryhill*, No. 5:18-CV-00045-MOC, 2018 WL 6492957, at *4 (W.D.N.C. Dec. 10, 2018); *Mann v. Berryhill*, No. 4:18-CV-3022, 2018 WL 6421725, at *8 (D. Neb. Dec. 6, 2018); *Clayton C. v. Comm'r of Soc. Sec.*, No. C18-638 BHS-BAT, 2018 WL 5985255, at *4 (W.D. Wash. Oct. 16, 2018), *R. & R. adopted sub nom, Christianson v. Berryhill*, 2018 WL 5962899 (Nov. 14, 2018). Relying on *Mann*, this Court has noted, "[O]n remand, a claimant may challenge an ALJ's appointment because Appointments Clause challenges are deemed to be in the category of nonjurisdictional structural constitutional objections that could be considered on appeal whether or not they were ruled upon below." *Anderson v. Comm'r of Soc. Sec.*, No. 18-CV-24-LRR, 2019 WL 1212127, at *5 (N.D. Iowa Feb. 19, 2019) (internal quotations omitted). If, however, the District Court declines to remand the case, this argument should be deemed waived.

## IV. CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **affirm in part and reverse and remand in part** the decision of the ALJ.  The Court should **remand Plaintiff's case with instructions to do the following:**

- Obtain a consulting medical examination regarding Claimant's need for a walker or other assistive device;

- Properly weigh the consulting examining physician's opinion and the opinions of the state agency medical consultants;

- Craft a new RFC based on *all* the evidence in the file, including the walker prescription; and

- If still appropriate, obtain clarifying expert testimony regarding whether employers in relevant fields commonly allow employees sit/stand options or whether sit/stand options have become common workplace accommodations; or

  - Obtain expert testimony regarding jobs available to Claimant based on the new RFC.

- In the alternative, if the ALJ finds Claimant is only capable of performing sedentary work after reweighing the evidence, the ALJ should award Claimant benefits.[13]

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).  Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P.

---

[13] The parties agree that if Claimant is only capable of sedentary work, she would be found disabled from her filing date.  (AR at 180.)

72.   Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

    **DONE AND ENTERED** this 27th day of February, 2020.

_____
Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa